IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---------------------------------------------------------x
WILLIAM MAIZNER,

                Plaintiff,         Civil Action No. 25 Civ. 1381

    -against-

                       **COMPLAINT**

UNITED STATES OF AMERICA,

PAM BONDI in her official
capacity as the Attorney General of the
United States, 950 Pennsylvania Avenue,
N.W., Washington, D.C. 20530,

    and

KASH PATEL, in his official capacity
as Director of the Federal Bureau of
Investigation, J. Edgar Hoover Building
935 Pennsylvania Ave, N.W.,
Washington, D.C. 20535-0001

                Defendants.
---------------------------------------------------------x

        Now comes Plaintiff, WILLIAM MAIZNER, by and through undersigned counsel, and complains of Defendants as follows:

**INTRODUCTION AND SUMMARY OF ACTION**

        1.    This complaint seeks, *inter alia,* declaratory and injunctive relief as a result of Defendants' violation of Plaintiff's Second Amendment rights by i) barring his ability to purchase firearms; and ii) falsely identifying him in the federal firearms database as a person prohibited from the lawful possession of firearms.

        2.    Plaintiff challenges Defendants' denial of his Second Amendment right to purchase a firearm and his classification in the National Instant Criminal Background Check System database as an individual prohibited from legally possessing firearms under 18 U.S.C. § 922.

1

3. Plaintiff is therefore entitled to (i) a judicial order directing the removal of all records in Defendants' database(s) reflecting that Plaintiff is a person prohibited from purchasing, receiving, or possessing a firearm; (ii) the transfer of firearms to Plaintiff's possession; (iii) a declaration that Defendants' conduct violates applicable statutory law and the Second Amendment; (iv) a permanent injunction against Defendants' conduct which violates applicable statutory law and the Second Amendment; and (v) an award of costs and reasonable statutory attorney's fees pursuant to 18 U.S.C. § 925A and 42 U.S.C. § 1988, (vi) and all such further and different relief he is entitled to.

## JURISDICTION AND VENUE

4. This Court has jurisdiction of this matter pursuant to 28 U.S.C. §§1331, 1343, 1346, 2201, 2202; 18 U.S.C. § 925A; and 42 U.S.C. § 1983 and § 1988, as the United States and the Federal Bureau of Investigation are Defendants and the case arises under the Constitution and laws of the United States.

5. Venue is proper under 28 U.S.C. § 1391(e)(1)(A).

## THE PARTIES

6. William Maizner ("Plaintiff") is a natural person and citizen of New York State, residing in the Town of Dix Hills, County of Suffolk, State of New York.

7. Plaintiff has no prohibitors to firearm possession under state or federal law.

8. Plaintiff has been erroneously denied the purchase of a firearm and is falsely identified in the National Instant Criminal Background Check System ("NICS") database as a "prohibited person" under 18 USC 922(g), as set forth in detail below.

9. Defendant UNITED STATES OF AMERICA ("USA") is a jural entity and a proper defendant under 18 USC § 925A.

2

10. Defendant PAM BONDI ("Bondi") is sued in her official capacity as the Attorney General of the United States of America. As the Attorney General, Defendant Bondi is responsible for administering and executing the laws, customs, practices, and policies of the United States, and is currently enforcing the laws, customs, practices and policies complained of in this action.

11. Defendant KASH PATEL ("Patel") is sued in his official capacity as the Director of the Federal Bureau of Investigation ("FBI"). As Director of the FBI, Defendant Patel is responsible for administering and executing the laws, customs, practices, and policies of the FBI, and is currently enforcing the laws, customs, practices and policies complained of in this action. Defendant Driscoll controls and directs the FBI, the agency that oversees and implements the National Instant Criminal Background Check System Case and the Criminal Justice Information Services Division ("CJIS") of the FBI. The CJIS Division maintains and implements the NICS database and communications system.

## LEGAL FRAMEWORK

a. **Applicable Law**

12. The Gun Control Act of 1968 prohibits certain categories of persons from shipping, transporting, possessing or receiving firearms or ammunition in or affecting interstate commerce. See, 18 U.S.C. § 922(g).

13. 18 U.S.C. § 922(g) identifies events and conditions that, *inter alia*, render an individual prohibited from possessing, transferring, and/or receiving firearms. See also, 27 C.F.R. 478.32(a)(1).

14. To prevent prohibited persons from purchasing firearms, the Brady Handgun Violence Prevention Act of 1993 directed the Attorney General to establish a background check

procedure that licensed firearms dealers would be required to consult in order to determine whether the "transfer" of a firearm to a potential buyer would violate federal or state law. See, 18 U.S.C. § 922(t)(1).

15. The Attorney General thereafter established NICS, managed by the FBI Criminal Justice Information Services Division's NICS Section. See, 28 C.F.R. § 25.3.

16. NICS provides full service to the federal firearms licensees ("FFLs") in 30 states, five U.S. territories, and the District of Columbia. NICS provides partial service to seven states. The remaining 13 states perform their own checks through NICS. The NICS background check verifies that the buyer is not ineligible to purchase or own a firearm. See, https://www.fbi.gov/services/cjis/nics

17. In New York State, all retail purchases of firearms must be conducted through an FFL, unless the transaction is between "immediate family". See, N.Y. Gen. Bus. Law Art. 39-DD § 897; 39-DDD § 898. As such, in New York State, every retail transfer (purchase) of a firearm requires a NICS background check.

18. FFLs are required to perform a background check via NICS prior to the sale or transfer of a firearm.

19. FFLs are prohibited from selling a firearm to an individual who fails a NICS background check.

20. It is illegal under federal law for a person to sell a firearm to a "prohibited person", to wit, a person prohibited from lawfully possessing a firearm. See, 18 U.S.C. § 921, § 922.

21. Where a purchaser is deemed prohibited by the FBI/NICS system from purchasing a firearm, it is impossible for that individual to lawfully purchase a firearm in the State of New York, even where the information in the NICS system incorrect and/or inconclusive.

**b. Burden on NICS to Prove Disqualification from Firearms Possession**

22.     Under 28 C.F.R. § 25.10, the FBI has an obligation to verify the records in its system with the originating agency and take all necessary steps to correct the record in NICS. This is not a discretionary duty.

23.     Under 28 C.F.R. § 25.5, "Validation and data integrity of records in the system":

"(a)    The FBI will be responsible for maintaining data integrity during all NICS operations that are managed and carried out by the FBI. This responsibility includes:

(1) Ensuring the accurate adding, canceling, or modifying of NICS Index records supplied by Federal agencies;

(2) Automatically rejecting any attempted entry of records into the NICS Index that contain detectable invalid data elements;

(3) Automatic purging of records in the NICS Index after they are on file for a prescribed period of time; and

(4) Quality control checks in the form of periodic internal audits by FBI personnel to verify that the information provided to the NICS Index remains valid and correct.

(b)     Each data source will be responsible for ensuring the accuracy and validity of the data it provides to the NICS Index and will immediately correct any record determined to be invalid or incorrect." See, 28 CFR 25.5.

24.     As detailed below, the FBI has failed to adhere to their non-discretionary statutory obligations under 28 C.F.R. § 25.5.

25.     Under 28 C.F.R. § 25.6, upon inquiry from an FFL during a purchase transaction, NICS is required to issue a "proceed" response if no disqualifying information is found in the NICS Index, NCIC, or III; a "delayed" response, if the NICS search finds a record that requires

more research to determine whether the prospective transferee is disqualified from possessing a firearm by Federal or state law; or a "denied" response, when at least one matching record is found in either the NICS Index, NCIC, or III that provides information demonstrating that receipt of a firearm by the prospective transferee would violate 18 U.S.C. 922 or state law

26. Under C.F.R. § 25.2, a "denied" transaction means the "denial of a firearm transfer based on a NICS response indicating one or more matching records were found providing information demonstrating that receipt of a firearm by a prospective transferee would violate 18 U.S.C. 922 or state law."

27. Under C.F.R. § 25.9, "Retention and destruction of records in the system", "NICS will retain NICS Index records that indicate that receipt of a firearm by the individuals to whom the records pertain would violate Federal or state law. The NICS will retain such records indefinitely, unless they are canceled by the originating agency."

28. Under C.F.R. §25.10, "Correction of erroneous system information", the FBI is required to "investigate the matter…[and request that] the data source to verify that the record in question pertains to the individual who was denied, or to verify or correct the challenged record. The FBI will consider the information it receives from the individual and the response it receives from the POC or the data source. If the record is corrected as a result of the challenge, the FBI shall so notify the individual, correct the erroneous information in the NICS, and give notice of the error to any Federal department or agency or any state that was the source of such erroneous records."

29. The FBI is improperly shifting its burden to the individual to follow up with various courts or jurisdictions. This is the same scenario found in *Ross v. Fed. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 903 F. Supp. 2d 333, 341 (D. Md. 2012).

30. In *Ross*, the district court found that the defendant improperly shifted the burden to the plaintiff to contact the state that supplied alleged prohibiting information to NICS and provide "appropriate documentation and/or update his record." *Id.* at 341. "Nothing in the regulations supports the NICS Section's position that the prospective transferee must disprove the existence of a potentially disqualifying criminal record to avoid all future delays." *Id.* "[t]he regulations make clear that the burden falls on the NICS Section to conduct additional research "to determine whether the prospective transferee is disqualified from possessing a firearm by Federal or state law." 28 C.F.R. § 25.6(c)(1).

31. If the FBI does not have confirmed information that an individual is, in fact, a prohibited person <u>they must approve the purchase</u>. Placing the burden on the individual to prove s/he is not a prohibited person violates the Second Amendment and is contrary to 28 C.F.R. § 25 (emphasis added).

32. The FBI's denial of firearms transactions based on anything other than a confirmed *de facto* state or federal prohibitor violates the Second Amendment.

33. Denying a firearm transaction based on incomplete or non-disqualifying information leaves Plaintiff and similarly situated individuals without any remedy prior to the termination of a constitutional right, which violates the right to due process.

34. This problem has been an ongoing issue with Defendants and they have been on notice as early as May 8, 2016 when the case *Gregory Michael Ledet v. USA*, in the United States District Court for the District of Columbia, Civil Action No. 1:16- cv-00865-ABJ was filed. Since that case, at least six others were filed: *Daniel Umbert, et al. v USA*, in the United States District Court for the District of Columbia, Civil Action No. 1:18-cv-01336-TSC; *Robert Boyd Rood v. USA*, in the United States District Court for the District of Columbia, Civil Action No. 1:17-cv-

7

00839-KBJ; *Robert Earl Rowe v. USA*, in the United States District Court for the District of Columbia, Civil Action No. 1:16-cv-01510- APM; *Charles Norfleet Hughes v. USA*, in the United States District Court for the District of Columbia, Civil Action No. 1:16-cv-01425-APM; *James Pollard v. Garland*, in the United States District Court for the District of Columbia, Civil Action No. 1:21-cv-00648-PLF; and *Sedita v. USA*, in the United States District Court for the District of Columbia, Civil Action No. 24-0900 (TNM).

35. After the filing of the aforementioned cases, the government defendant(s) "voluntarily" provided the relief sought in the actions. In *Umbert*, the government corrected its information to allow three of the plaintiffs to purchase firearms; in the remaining cases, all five plaintiffs were granted certificates to purchase their firearms. The government's post-filing conduct mooted those cases, yet the issues underlying the present action continue to evade review and repeat in Defendants' practices.

36. The protocols and practices of the NICS system violate Plaintiff's Second Amendment rights and the civil rights of all other similarly situated individuals, leaving them without a remedy for resolution short of retaining an attorney to seek redress in the courts.

***February 1, 2023 Notification***

37. In early 2023, Plaintiff attempted to purchase a firearm through an FFL.

38. Plaintiff completed the ATF Form 4473, which was submitted to NICS for the purposes of conducting a criminal background check.

39. Plaintiff's transaction was denied by NICS.

40. The transaction number provided to the FFL was NTN: 102T52X7M.

41. Plaintiff requested from the FBI the reasons for the denial of his transaction.

42. By letter dated February 1, 2023 from the FBI, Plaintiff received notice that his transaction was denied because he is identified in NICS as a person prohibited from possessing firearms pursuant to 18 U.S.C. 922(g).

43. Specifically, the FBI informed that Plaintiff was denied under § 922(g)(1) for being:

> "A person…convicted in any court of a crime punishable by imprisonment for a term exceeding one year or any state offense classified by the state as a misdemeanor and is punishable by a term of imprisonment of more than two years." Please note that it does not matter whether the sentence of more than one or two years was actually ordered or served; the prohibitor is based upon the maximum sentence that could have been imposed upon the individual by the court. In addition, some convictions which may have been "sealed" or "expunged" for certain purposes still qualify as 18 U.S.C. §922(g)(1) prohibitors.

44. Plaintiff has never been convicted of any crime punishable by imprisonment for a term exceeding one year or any state offense classified by the state as a misdemeanor and punishable by a term of imprisonment of more than two years.

45. Knowing that he, in fact, has no disqualifiers under federal or state law, Plaintiff again contacted NICS in 2024.

46. Plaintiff submitted request for the reasons for the denial under the same NTN: 102T52X7M.

47. By letter dated May 16, 2024, the FBI informed Plaintiff of an entirely different reason for the agency's belief that Plaintiff is a prohibited person.

48. This time, there was no indication by the FBI that Plaintiff had been "convicted of any crime punishable by imprisonment for a term exceeding one year or any state offense classified by the state as a misdemeanor and punishable by a term of imprisonment of more than two years" under § 922(g)(1) – as the FBI's February 1, 2023 letter informed.

9

49. This time, the FBI informed Plaintiff that he is a person prohibited from possessing firearms under § 922(g)(9).

50. Specifically, the FBI's May 16, 2024 letter informed that Plaintiff is a "prohibited person" because he "has been convicted…of a misdemeanor crime of domestic violence …"

51. Defendants' May 16, 2024 letter directed Plaintiff to contact (i) the San Diego County Sheriff's Office and (ii) San Diego Superior Court if he believes that the information in the NICS system is incorrect.

52. Defendants placed the burden on *Plaintiff* to disprove their erroneous records identifying Plaintiff as a prohibited person.

53. It is not Plaintiff's burden to prove that he is not a prohibited person.

54. The burden rests with Defendants *entirely* to establish that their records are accurate and that they are not precluding non-disqualified people, like Plaintiff, from engaging in conduct presumptively protected by the plain text of the Second Amendment.

55. Plaintiff was previously arrested by the San Diego County Sheriff's Office and the matter was adjudicated through the San Diego Superior Court.

56. Plaintiff contacted the San Diego County Sheriff's Office and the San Diego Superior Court.

57. The charge for which Plaintiff was arrested involved an altercation with a male taxicab driver.

58. The charge for which Plaintiff was arrested did not involve any "qualifying relationship" under the statute.

59. Plaintiff was informed by the San Diego Court that the charge was dismissed and sealed.

***NICS FBI CJIS Failed to Perform A Statutorily Imposed Ministerial Duty***

60. NICS, FBI and CJIS were required to investigate the underlying information related to Plaintiff's prohibited record in NICS to ensure that Plaintiff's conviction met the standard of a prohibiting conviction.

61. None of the information contained in Plaintiff's FBI and state criminal history reports indicates that his conviction for attempted assault was domestic violence related, identified the complainant, or indicated that the event was categorized as a "qualifying relationship" under 18 U.S.C. § 922(g)(9).

62. NICS, FBI and CJIS failed to perform the ministerial duty of verifying the information in its database to confirm that Plaintiff was properly identified therein.

63. NICS, FBI and CJIS failed to perform the ministerial duty of verifying the information in its database to confirm that Plaintiff was still subject to an order of protection.

64. NICS, FBI and CJIS failed to perform the ministerial duty of verifying the information in its database to confirm that Plaintiff was convicted of a misdemeanor crime involving a "qualifying relationship."

65. Had NICS, FBI and CJIS performed its statutory duty, it would have been revealed that Plaintiff was no longer subject to an order of protection.

66. Had NICS, FBI and CJIS performed its statutory duty, it would have been revealed that Plaintiff's conviction was not a disqualifying event under federal or state law, that his conviction did not involve a "qualifying relationship" and that he did not belong in the NICS database.

67. The April 17, 2023 letter informed Plaintiff that, to 'challenge' the finding by the FBI CJIS, he should contact Queens Criminal Court.

68. Under 28 C.F.R. § 25.10, the FBI has an obligation to verify the records in its system with the originating agency and take all necessary steps to correct the record in NICS – not Plaintiff. This is not a discretionary duty.

69. NICS, FBI and CJIS shirked its statutory obligation to verify the information in the federal databases, obtain the police investigative reports, obtain the records from the Queens Criminal Court, investigate Plaintiff's claims, and "take all steps necessary to correct the record in the NICS system."

70. NICS, FBI and CJIS placed its legal obligation under 28 C.F.R. § 25.10 directly on Plaintiff's shoulders.

71. Plaintiff has no obligation to do the job that NICS, FBI and CJIS are required to perform under 28 C.F.R. § 25.10.

72. Because of Defendants' actions and failures to act, Plaintiff is erroneously identified to law enforcement, FFLs, and any other agency with the ability to access and/or obtain information contained in the NICS system as a "prohibited person".

73. Because Plaintiff is identified as a "prohibited person" by the NICS system, even if he were to somehow acquire a firearm, his possession of a firearm would subject him to criminal penalties, including incarceration, because a NICS background check by third party would reveal [albeit falsely] that he is identified as a "prohibited person" whose possession of firearms is unlawful.

74. Plaintiff has none of the prohibiting factors, events, or conditions listed in 28 U.S.C. § 922 that constitute a prohibitor to firearm possession.

75. In addition to the constitutional violations detailed herein, Plaintiff has been monetarily damaged in costs and attorney's fees, which continue to accrue.

## COUNT 1 – SECOND AMENDMENT

76. Plaintiff repeats and realleges the allegations of the preceding paragraphs as if set forth herein.

77. Plaintiff has an individual, pre-existing right to possess firearms under the Second Amendment.

78. Defendants' conduct as detailed herein violates Plaintiff's rights as protected by the Second Amendment and will continue to violate Plaintiff's constitutional rights without the relief sought herein.

## COUNT II – DECLARATORY JUDGEMENT

79. Plaintiff repeats and realleges the allegations of the preceding paragraphs as if set forth herein.

80. The Declaratory Judgment Act provides, "In a case of actual controversy within its jurisdiction, any court of the United States may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. 2201(a).

81. Absent a declaratory judgment, Plaintiff will continue to suffer irreparable injury in the future.

82. There is an actual controversy between the parties of sufficient immediacy and reality to warrant issuance of a declaratory judgment.

83. This Court possesses an independent basis for jurisdiction over the parties.

84. A declaratory judgment regarding the complained of policies will determine the rights and responsibilities of the parties, clarify and settle the legal issues going forward, and will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to this proceeding.

85. Defendants' laws, customs, practices, and policies violate the Second Amendment to the United States Constitution, and applicable statutory law, facially and as applied against the Plaintiff in this action, causing him an injury-in-fact.

86. Plaintiff is therefore entitled to a declaration declaring such laws, customs, policies, and practices are unconstitutional.

87. Plaintiff is also entitled to a declaration that Plaintiff is not and may not be barred or prohibited from any agency of the United States from obtaining firearms or ammunition by virtue of his California state court conviction.

## COUNT III – INJUNCTIVE RELIEF

88. Plaintiff repeats and realleges the allegations of the preceding paragraphs as if set forth herein.

89. Plaintiff has an individual, pre-existing right to possess firearms under the Second Amendment.

90. Defendants have the burden, not Plaintiff, of demonstrating the existence of a longstanding, historically accepted basis to impede, delay, interfere with, and/or prevent Plaintiff's possession of firearms.

91. Plaintiff has a Constitutionally protected right to purchase firearms and ammunition; but for Defendants' denial of Plaintiff's purchase, he would be allowed to purchase firearms and ammunition from an FFL.

14

92. Because Plaintiff has no disqualifiers under state or federal law to the possession and purchase of firearms, Defendants should be ordered to (i) immediately remove all disqualifying information concerning Plaintiff's eligibility to possess firearms; (ii) approve Plaintiff's transaction NTN: 102T52X7M.

93. Plaintiff also requests leave to apply to this Court for an award of reasonable statutory attorneys' fees and costs.

WHEREFORE, Plaintiffs respectfully request that the Court:

(1) Declare that Defendants' conduct violates applicable federal statutory law and the Second Amendment;

(2) Order Defendants to correct their records to reflect that Plaintiff is not a person prohibited from purchasing, receiving, or possessing firearms resulting from the aforementioned convictions;

(3) Order Defendants to allow the transfer of firearms to Plaintiff;

(4) Grant Plaintiff an award of nominal damages;

(5) Grant Plaintiff leave to apply for an award of costs and reasonable statutory attorney's fees; and

(6)     Grant all other such further and different relief that this Court deems just and equitable.

Dated: May 6, 2025
       Scarsdale, New York

                              Respectfully submitted,


                              /s/ Amy L. Bellantoni
                              Amy L. Bellantoni, Esq.
                              The Bellantoni Law Firm, PLLC
                              2 Overhill Road, Suite 400
                              Scarsdale, New York 100583
                              (914) 367-0090 (t)
                              (888) 763-9761 (f)
                              abell@bellantoni-law.com
                              DC District Bar No. NY0355
                              *Counsel for Plaintiff*